# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

JEFFERSON SMITH

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:16-mj-00720

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about July 25, 2016 to the present, in Marion County, in the Southern District of Indiana defendants did,

**Count 1**: Coercion or Enticement of a Minor, in violation of 18 U.S.C. § 2422(b);
**Count 2**: Distributing and Receiving Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and
**Count 3**: Possession of Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)(b) and (b)(2).

I further state that I am Task Force Officer, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
TFO Kurt Spivey, FBI

Sworn to before me, and subscribed in my presence

October 19, 2016            at     Indianapolis, Indiana
**Date**

Debra McVicker Lynch, U.S. Magistrate Judge
**Name and Title of Judicial Officer**               **Signature of Judicial Officer**

# AFFIDAVIT

I, Kurt Spivey, a Task Force Officer with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

1. **Affiant:** I, Detective Kurt B. Spivey with the Indianapolis Metropolitan Police Department have been a law enforcement officer for 20 years. I am a Detective in the Cybercrime Unit of the Indianapolis Metropolitan Police Department. I am also a cross designated Task Force officer assigned to the FBI the Indianapolis Violent Crimes Against Children Task Force. During the last 10 years of my career, my primary responsibility has been the investigation of Child Pornography, Child Exploitation, and Child Solicitations. I have been an active member of the Indiana Internet Crimes Against Children (ICAC) Task Force for 10 years.

2. **Training:** As an ICAC member, I have received numerous training opportunities including; ICAC Investigative Techniques, ICAC Undercover Chat, The ICAC National Conference and the Crimes Against Children National Conference. I have also attended the Purdue University On-Scene Forensic Preview Training as well as the TLO Fairplay P2P Course. As an ICAC member, I have received continuous and on-going training through working with other ICAC members who are experts in their field, I attend monthly training meetings, and I gain knowledge and experience from conducting these investigations on a daily basis. In January of 2014, I was appointed to the FBI Child Exploitation Task Force as a Task Force Officer. This position, as well as federal investigations that I have previously conducted, has broadened my experience into the federal system, providing additional case-experience, working knowledge, and training opportunities.

3. **Information provided**: The statements in this affidavit are based on information obtained from my observations and communications, as well as information learned from other law enforcement officers and witnesses. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant and criminal complaint, I have not included each and every fact known to the investigators concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that JEFFERSON SMITH (SMITH) committed criminal offenses.

4. **Requested action**: I make this affidavit in support of an application for an arrest warrant and criminal complaint charging SMITH with the following offenses:

   a. **Count 1**: Coercion or Enticement of a Minor, in violation of 18 U.S.C. § 2422(b);

   b. **Count 2**: Distributing and Receiving Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and

   c. **Count 3**: Possession of Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)(b) and (b)(2).

5. **Statutes**:

   a. **Coercion and Enticement (18 U.S.C. § 2422(b))**: Under the United States Code, it is unlawful for a person to use the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense. This statute incorporates both state and federal law in determining whether the underlying sexual activity is a criminal offense, including the federal law prohibiting the sexual exploitation of a child (18 U.S.C. § 2251(a)).

b. **Distribution, Receipt and Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct**: This investigation concerns alleged violations of **18 U.S.C. § 2252**, which generally prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction, where the producing of such visual depiction involves the use of a minor, engaging in sexually explicit conduct; and such visual depiction is of such conduct; and where the visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce. Section (b) of this statute applies where the defendant has been previously convicted, under the laws of any State, (of an offense) relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children.

6. **Child Victim 1:** The pseudonym "CHILD VICTIM 1" represents a minor child was fifteen (15) years of age at the time of the conduct in question.

7. **Definitions:** The following definitions apply to this Affidavit:

   a. "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

   b. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or

      masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

  c. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

  d. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  e. Skype: "is an application that provides video chat and voice call services. Users may exchange such digital documents as images, text, video and any others, and may transmit both text and video messages. Skype allows the creation of video conference calls. Skype is available for Microsoft Windows, Macintosh, or Linux, as well as Android, Blackberry, Apple and Windows smartphones and tablets. . .. Skype allows users to communicate over the Internet by voice using a microphone, by video using a webcam, and by instant messaging. Skype-to-Skype calls to other users are free of charge, while calls to landline telephones and mobile phones (over traditional telephone networks) are charged via a debit-based user account system called Skype Credit."[1] Skype Technologies is a telecommunications company headquartered in Luxembourg City, Luxembourg and Redmond, Washington, United States.

---

[1] Wikipedia, https://en.wikipedia.org/wiki/Skype.

**Probable Cause**

8.      Investigation: This investigation into the internet activities of Jefferson SMITH began in February of 2015, with the receipt of a CyberTip from the National Center for Missing and Exploited Children (NCMEC).  Since that time, Jefferson Smith and / or the address 9111 Ben Hur St., Clermont, IN (TARGET ADDRESS) have been the subject of 4 total investigations into activities involving child pornography.  Each of these investigations involved the website DeviantART.  According to its "about" page, DeviantART is "the largest online social network for artists and art enthusiasts."

9.      JEFFERSON SMITH: Jefferson Smith is a convicted sex offender.  On or about March 5, 2012, SMITH was convicted of the offense of Attempted Sexual Assault of a Child in Colorado.  He was a registered sex offender living in Indiana at the TARGET ADDRESS.

10.     CHILD VICTIM 1: On October 07, 2016, this affiant was advised that Detective Laura Smith of the Indianapolis Metropolitan Police Department was assigned a case to assist Los Angeles County (California) Sheriff's Detective John Amis (AMIS), who was conducting a child exploitation investigation and had tracked his suspect to the Indianapolis area.  He identified his suspect as Jefferson Smith.  Detective Smith immediately recognized and linked the case to this Affiant's on-going investigation of Jefferson SMITH.

11.     AMIS was assigned to investigate a case involving a fifteen-year-old female victim, CHILD VICTIM 1, who began communicating with an unknown adult suspect. CHILD VICTIM 1 had sent the suspect several nude photographs of herself which depicted the victim's face along with her bare breasts and exposed genitals.

12.     CHILD VICTIM 1 told police that she first met the suspect online through an online social media website called DeviantART. CHILD VICTIM 1 is an aspiring artist and

uploaded several of her drawings to the social website. CHILD VICTIM 1 used a personal photograph of herself as her profile photo. The suspect contacted CHILD VICTIM 1 through the DeviantART's internal messaging system on July 25, 2016. He said, "My dear you're so good looking I'd ask you to come model for my site."

13. CHILD VICTIM 1 and the suspect continued to message each other for three more days and the suspect suggested they take their conversation to Skype, another online social networking computer and smart phone application.

14. The suspect provided CHILD VICTIM 1 his Skype username, "keryvian.80," and told her that it would show up as "The Courier." According to information obtained by CHILD VICTIM 1's parents, the victim and suspect initially connected through Skype on July 25, 2016, at approximately 8:33 PM.

15. During their initial conversations, the suspect told CHILD VICTIM 1 he could train her, suggesting "it's not hard at all." He also informed her that she would be taking photographs of herself wearing different clothing, suggesting that she could get money by exposing her body. CHILD VICTIM 1 told him she was not comfortable with taking any nude photographs and advised the suspect she was only fifteen years old. The suspect responded with, "Even being 15 you'd be okay to just about anything but full nudes." The suspect eventually gave CHILD VICTIM 1 a nickname, "Kitty."

16. The suspect eventually convinced CHILD VICTIM 1 to take pictures of her naked body. Messages from the suspect leading up to the nude photographs indicated that he would "get her comfortable doing the modeling," and the suspect frequently commented on her age.

17. Over the next two months, CHILD VICTIM 1 and suspect continued talking with each other through Skype. Early on, the suspect advised CHILD VICTIM 1 to install the Skype

app on her cell phone, an Apple iPhone, so they could "do some modeling like that." CHILD VICTIM 1 sent the suspect a number of different photographs over the two-month period. The photographs varied from CHILD VICTIM 1 being fully clothed to different stages of undress. Eventually, the suspect asked CHILD VICTIM 1 to put objects inside her vagina. She obliged and used the handle portion of a brush and a black "Sharpie" pen to produce the images that she transmitted to the suspect through Skype.

18. On or about September 15, 2016, CHILD VICTIM 1's parents discovered she had been communicating with the suspect and sending him nude photographs of herself to him. They seized her cell phone and directed her to delete the Skype app from the phone and nude photographs stored in the phone.

19. In one of the Skype messages which the suspect sent CHILD VICTIM 1, a photograph with the webpage link was embedded within the digital photograph itself. Upon clicking on the photograph, CHILD VICTIM 1's father discovered that it leads to a website managed by the suspect, www.500px.com\chaoticnightmaresphotography. CHILD VICTIM 1's father noted the name associated with the account, "Darrin Tyber," and sent him a message warning him law enforcement would be notified. The website has since been deactivated.

20. Using this information, AMIS conducted additional investigation regarding "Darrin Tyber" and "Chaotic Nightmares Photography." Detective Amis conducted a second search on www.500px.com, this time eliminating "Nightmares" from the name. A second website was located at www.500px.com\chaoticphotography with the name "Darrin Tyber."

21. According to the about page, "Darrin Tyber" had been a member since March 10, 2015.

22. Upon Detective Amis reviewing the 422 photographs on the site, he noticed that many of the photographs were of young women, ages unknown, in what appeared to be "selfie" style poses.

23. Detective Amis then conducted a Google name search for "Darrin Tyber." According to Google, the first Google association was to Twitter and the second was the previously mentioned website listed at www.500px.com. Clicking on the Twitter hyperlink, Detective Amis discovered the Twitter feed, belonging to a user by the name of "Darrin Tyber" at @DarrinTyber, consisted of several photograph of women of varying ages in many different "selfie" style poses. Many of the photographs directed others to another online photographic distribution site called BentBox.

24. With this new information, Detective Amis conducted a search on www.bentbox.com. A "Darrin Tyber" was located on the site at www.bentbox.com\chaoticphotography.

25. Detective Amis also discovered that "Darrin Tyber" also had a Facebook page; however, this page led to a username of "Darrin Smith." According to the Facebook user's "About" page and Facebook timeline, this Facebook page was associated with the names "Darrin Tyber" in the link and "Chaotic Nightmares LLC" in the "Intro" section. Although there were no nude photographs on this Facebook page, several of the images found on this Facebook page had been seen within the other previously mentioned websites. One specific image was found to be common throughout many of the websites Detective Amis reviewed. The image was that of a black flag with two solid, vertical red lines upon each side. Centered on the flag was a red gear split by a red sword. This image was found on BentBox, Twitter and Facebook as the user's profile photo. Additionally, in Det. Amis' review of "Darrin Tyber's" DeviantART page

(brokenwasteland.deviantart.com), "Darrin Tyber" made several references to selling his photos on BentBox, similar to what was found on his Twitter feed.

26. Detective Amis requested search warrants for the suspect's described accounts which included DeviantART, Skype, Facebook, and Twitter for information leading to the suspect's true identity and whereabouts and the possibility of additional, unreported victims of on-line exploitation.

27. On September 22, 2016, Detective Amis obtained a search warrant for the previously described social media companies under file number 016-16295-1159-129 in the County of Los Angeles, North Judicial District of Los Angeles, California. The search warrant was signed by Judge Andrew Cooper at the Antelope Valley Courthouse.

28. Later that same day, both DeviantART and Twitter provided returns for the requested information. DeviantART provided that the account "brokenwasteland.deviantart.com." has an associated user ID of 33526247, with username: Broken Wasteland, date of birth: 10-16-1980, and a verified email of quantumwastelander@gmail.com.

29. Detective Amis found a common IP Address, 68.38.179.188, located within both deviant ART and Twitter returns. According to ARIN (American Registry for Internet Numbers), an internet resource for determining who owns a particular IP Address, 68.38.179.188 was owned by Comcast Cable Communications.

30. Twitter also had a cell phone number, 317-728-9482, associated with the described Twitter account. According to Phone Validator, an internet resource for determining which provider a cell phone number is associated with, T-Mobile was the service provider for this number.

31. On September 27th, 2016, Detective Amis also obtained a search warrant to examine each of the described accounts of T-Mobile and Comcast Cable Communication.

32. On September, 28, 2016 Comcast provided the subscriber name of the IP address 68.38.179.188 to be: Terri Smith, address: 9111 Ben Hur Avenue, Indianapolis, Indiana 46234 with an associated telephone number 317-970-XXXX (redacted but known to this affiant).

33. Det. Amis was able to log in to CHILD VICTIM 1's Skype account and retrieved the conversations between CHILD VICTIM 1 and the adult male, including the transmittal of numerous images of CHILD VICTIM 1 engaged in sexually explicit conduct.

34. Based on this investigation, as well as other investigative leads, this Affiant obtained multiple search warrants for the person of Jefferson Smith, the TARGET ADDRESS, and vehicles located at the target address. The warrants were obtained under seal under Cause Numbers 1:16-mj-705, 706, 707, 708, and 709 on October 13, 2016.

35. On October 18, 2016, the warrants were executed at the TARGET ADDRESS.

36. Jefferson SMITH was physically present at the time the warrant was executed.

37. SMITH was advised of his Miranda rights and agreed to waive those rights to speak with investigators. His interview was both audio and video recorded.

   a. SMITH admitted to investigators that he used the screen name "Darrin Tyber." He admitted to using the website DeviantArt.

   b. SMITH admitted to communicating with CHILD VICTIM 1. He admitted that he convinced CHILD VICTIM 1 to create visual depictions of herself engaged in sexually explicit conduct and then to send to SMITH, through Skype, the images of herself engaged in sexually explicit conduct.

   c. Smith acknowledged that he was aware that CHILD VICTIM 1 was 15 years old.

    d. SMITH was shown by the interviewers at least one image of CHILD VICTIM 1 engaged in sexually explicit conduct and he acknowledged that he had used and convinced CHILD VICTIM 1 to create this image. SMITH admitted to investigators that he had received the image of CHILD VICTIM 1 engaged in sexually explicit conduct via the Internet.

38. The forensic on-scene triage team examined SMITH's digital devices pursuant to the terms of the search warrant.

    a. They discovered over 300 images of CHILD VICTIM 1 on an external hard drive which was identified as belonging to SMITH.

    b. At least one of those images was of CHILD VICTIM 1 engaging in sexually explicit conduct, including an image which CHILD VICTIM 1 had previously told police that she had created at the request of "The Courier." This same image was found in the Skype account of CHILD VICTIM 1 by AMIS.

39. **Interstate commerce:** SMITH used the Internet to communicate with CHILD VICTIM 1, which is a means of interstate and foreign commerce.

40. At all relevant periods, SMITH was a resident of the Southern District of Indiana and his collection of images was located within the Southern District of Indiana.

_____
Kurt Spivey

Subscribed and sworn before me this 19a day of October, 2016.

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana